Kenneth B. Grimes, P.C. (#6555)
Attorney for Plaintiffs
480 East 400 South, Suite 203
Salt Lake City, Utah 84111
Telephone: (801) 359-4212
Email: kglawyerutah@gmail.com

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RILEY A. CLINE and ZACHARY AARON CLINE, <br><br> Plaintiffs, <br><br> -*v*- <br><br> PARKER INDUSTRIES, INC. dba SOFA SOURCE, and DOES 1-3, <br><br> Defendant. | **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM** <br> **(Oral Argument Requested)** <br><br><br> Case No.  2:21-cv-635-DAO <br><br> Magistrate Judge: Daphne A. Oberg |

## MOTION

The above-named Plaintiffs, by and through their attorney of record,

respectfully move the Court pursuant to Fed. R. Civ. P. 56(a), for partial summary

judgment in favor of Plaintiffs and against the Defendant, on the following issues

in this case: (1) upon liability for hostile work environment gender discrimination

under 42 USC §2000e-2, on behalf of Plaintiff Riley A. Cline; (2) upon any potential

*Ellerth/Faragher* affirmative defense to Riley A. Cline's hostile work environment

claim; (3) upon liability for unlawful employment retaliation under 42 USC §2000e-

3, on behalf of both Plaintiffs; (4) upon Defendant's Affirmative Defenses.[1]

---

[1] Plaintiffs' remedies, including punitive damages, would be left for future determination.

## MEMORANDUM

### Plaintiffs' Statement of Uncontested Material Facts.

**A.   Facts Relating to Plaintiffs' Claims.**

1.   Plaintiff Riley A. Cline ("Riley") commenced employment with Defendant Sofa Source as an upholstery technician on April 23, 2019. (Complaint ¶14; Answer ¶14).

2.   Plaintiff Zachary Aaron Cline ("Zachary") commenced employment with Defendant Sofa Source as an upholstery technician on April 29, 2019. (Complaint ¶15; Answer ¶15).

3.   During their employment at Sofa Source, Riley and Zachary were married to each other. (Riley Declaration[2] ¶4; Zachary Declaration[3] ¶3).

4.   Riley and Zachary's direct supervisor at Sofa Source was Ted Carter ("Mr. Carter"), who served as Production Manager for Sofa Source. (Riley Declaration ¶5; Zachary Declaration ¶4).

5.   Mr. Carter was directly involved in hiring Riley and Zachary. (Riley Declaration ¶6; Zachary Declaration ¶5).

6.   Mr. Carter controlled the working conditions of the employees he supervised, including scheduling and work assignments. (Riley Declaration ¶7;

---

[2] The Declaration of Riley A. Cline is included within Plaintiffs' Appendix filed concurrently herewith as Exhibit "1". Said Declaration is cited herein as "Riley Declaration."

[3] The Declaration of Zachary Aaron Cline is included within Plaintiffs' Appendix filed concurrently herewith as Exhibit "2". Said Declaration is cited herein as "Zachary Declaration."

Zachary Declaration ¶6).

7.   Mr. Carter had authority to hire and fire the employees that he supervised at Sofa Source. (Parker Depo.[4], 17, 40).

8.   Upon the commencement of her employment with Sofa Source, Riley became subjected to a continuing pattern and practice of sexual harassment by Mr. Carter. Said harassment included frequent touching of Riley by Mr. Carter, and comments about Riley's appearance and gender by Mr. Carter. (Riley Declaration ¶8).

9.   Mr. Carter's sexual harassment was offensive and unwelcome to Riley. (Riley Declaration ¶9).

10.   Mr. Carter's sexual harassment of Riley generally occurred outside the presence of Zachary. (Riley Declaration ¶10).

11.   Mr. Carter's sexual harassment of Riley included hugging, winking, staring, standing close to Riley, and comments about Riley's gender and appearance, averaging over three such incidents per day. Mr. Carter also frequently rubbed Riley's arms, neck and shoulders. Mr. Carter sometimes made demeaning comments to Riley about her gender and about women in the workplace. (Riley Declaration ¶11).

12.   Mr. Carter's sexual harassment of Riley included the following specific incidents: (1) on one occasion, Mr. Carter pinned Riley against a door while he

---

[4] The Deposition of Aaron Parker, taken in this case, is cited as "Parker Depo." True and correct copies of all pages of said Deposition that are cited herein are included within Plaintiffs' Appendix as Exhibit "3").

hugged her; (2) on one occasion, Riley told Mr. Carter that she was in a lot of pain after having ear surgery, and would appreciate not being touched, rubbed or crowded. Less than an hour later Mr. Carter grabbed and rubbed Riley's arms. (Riley Declaration ¶12).

13.   Mr. Carter's sexual harassment of Riley altered the terms, conditions and privileges of her employment with Sofa Source. It was difficult for Riley to do her job knowing that her supervisor would subject her to inappropriate touching or comments of a sexual nature. As a result, Riley attempted to avoid Mr. Carter, which adversely affected her work performance. Further, after each incident of inappropriate conduct by Mr. Carter, Riley was emotionally upset and unable to concentrate on her work. Mr. Carter's actions caused embarrassment to Riley and interfered with her relationship with her coworkers, who observed Mr. Carter's inappropriate actions and commented to Riley about them. Mr. Carter's actions were particularly demeaning to Riley because her husband was a coworker in the same work place. (Riley Declaration ¶13).

14.   Riley expressed her opposition to the sexual harassment by Mr. Carter when it occurred, through comments and gestures to Mr. Carter, and by avoiding Mr. Carter. However, Mr. Carter continued to sexually harass Riley. (Riley Declaration ¶14).

15.   On multiple occasions, Mr. Carter mentioned his authority to terminate employees in the presence of Riley and Zachary. (Riley Declaration ¶15; Zachary Declaration ¶7).

4

16.   Because Mr. Carter was Riley's supervisor, with authority over her schedule and work assignments, and had the ability to terminate Riley's employment, Riley was highly intimidated by Mr. Carter, and was afraid that she would be terminated if she complained about his conduct. (Riley Declaration ¶16).

17.   During the morning of May 22, 2019, Mr. Carter approached Riley and Zachary while they were working together, and stated that he was hiring some new female workers, and that Riley would be jealous because she would no longer be the best girl. Mr. Carter then stated that Riley was already not the best, because the boys were better. Riley told Mr. Carter to stop bringing up her gender because it has nothing to do with her job. Mr. Carter continued to make demeaning comments about Riley's gender and work performance. Zachary then told Mr. Carter to quit bashing Riley for no reason. (Riley Declaration ¶17; Zachary Declaration ¶8).

18.   On May 23, 2019, while Riley and Zachary were eating lunch together in the break area, Mr. Carter walked past them several times, glaring at them and muttering. Eventually, Mr. Carter stated to Riley and Zachary that he had changed their schedules so that they had to work the next day (Friday) which they previously had scheduled off. Riley stated, "I wish you'd let us know earlier so we could plan around it." Mr. Carter then stated to Riley that she should adjust her attitude or go home. Riley stated that her attitude would be better if Mr. Carter stopped inappropriately touching her. Riley proceeded to describe several incidents in which Mr. Carter had inappropriately touched her, and stated that she was

"tired of being harassed." Mr. Carter told Riley and Zachary to go home for the day. (Riley Declaration ¶18; Zachary Declaration ¶9).

19.   During her confrontation with Mr. Carter on May 23, 2019, Riley was emotionally upset and raised her voice. Zachary provided support to Riley and attempted to calm her down. Riley did not scream, shout, or yell. She did not threaten, insult, or swear at Mr. Carter. (Riley Declaration ¶19; Zachary Declaration ¶10).

20.   Aaron Parker ("Mr. Parker"), who served as Operations Manager, and was Mr. Carter's supervisor at Sofa Source.[5] (Parker Depo. at 9, 16), was not present during the confrontation between Riley and Mr. Carter on May 23, 2019, and does not have personal knowledge of what occurred during the confrontation. (Parker Depo. at 23-27, 37-38; Riley Declaration ¶20; Zachary Declaration ¶11).

21.   After their confrontation with Mr. Carter on May 23, 2022, Riley and Zachary went to speak with Mr. Parker. Riley informed Mr. Parker of Mr. Carter's sexual harassment. (Parker Depo. at 33). Mr. Parker did not ask Riley for the specifics of her sexual harassment complaint.  (Parker Depo. at 33-34).[6] Mr. Parker stated, "that's just how Ted is" (Parker Depo. at 34; Riley Declaration ¶21; Zachary Declaration ¶12). Mr. Parker stated that he would discuss Riley's complaint with

_____

[5] Mr. Parker was also the husband of Amy Parker, who was the sole owner and President of Sofa Source. (Parker Depo. at 6).
[6] Riley and Zachary state that Riley informed Mr. Parker of specific instances of Mr. Carter's sexual harassment of Riley. (Riley Declaration ¶21; Zachary Declaration ¶12).

Mr. Carter. (*Id*). Mr. Parker stated that Riley and Zachary could take the following

day off. (*Id*). Mr. Parker told Riley and Zachary that they were not going to be fired.

(Parker Depo. at 37; Riley Declaration ¶21; Zachary Declaration ¶12).  Mr. Parker

did not ask Riley and Zachary why they had allegedly been yelling or screaming

during their confrontation with Mr. Carter. (Parker Depo. at 38).

22.   During their meeting with Mr. Parker, Zachary stood with Riley and

supported her complaints about sexual harassment. (Riley Declaration ¶22;

Zachary Declaration ¶13).

23.   Mr. Parker testified in his Deposition that, on May 24, 2019 (the day

after his meeting with Riley and Zachary), he received a telephone call from Mr.

Carter. Mr. Carter allegedly stated[7] that the Clines were "blowing up his phone"

with hostile text messages, that he was "feeling very harassed", and that he

"couldn't take all the hostility anymore." Mr. Carter wanted to know "what to do

about the Clines." (Parker Depo. at 39-42). Mr. Parker left it up to Mr. Carter to

decide whether to terminate the Clines' employment (*Id* at 40). Later that day, Mr.

Carter informed Mr. Parker that he had decided to terminate Riley and Zachary's

employment. (*Id* at 41-42). Mr. Parker then sent a text message to Riley stating that

Mr. Carter had terminated Riley and Zachary's employment with Sofa Source.[8] (*Id*.)

---

[7] Mr. Carter has provided no evidence in this case. *See* Defendant's Answers to
Plaintiffs' Second Set of Interrogatories, No. 3, a true and correct copy of which is
included in Plaintiffs' Appendix as Exhibit "4". Mr. Parker testified that he last
spoke with Mr. Carter during late 2019. (Parker Depo. at 18).
[8] A true and correct copy of said text message is included within Plaintiffs'
Appendix as Exhibit "5"

24.   Mr. Parker's text message (Exhibit "5" hereto) was received by Riley and Zachary on March 24, 2019, while they were off of work, and was the first notice that Riley and Zachary received that they had been terminated. (Riley Declaration ¶23; Zachary Declaration ¶14).

25.   Riley and Zachary deny sending any inappropriate text messages to Mr. Carter. (Riley Declaration ¶24; Zachary Declaration ¶15).

26.   Mr. Parker did not see the alleged hostile text messages that Plaintiffs sent to Mr. Carter. (Parker Depo. at 38).

27.   Defendant does not have copies of the alleged hostile text messages that Plaintiffs sent to Mr. Carter. (Parker Depo. at 39).

28.   On or about May 28, 2019, Riley and Zachary each received a letter from Defendant and signed by Mr. Parker, which stated in relevant part:

> [Y}our employment with the Sofa Source…has been terminated effective Friday May 24, 2019 for just cause as a result of the heated and hostile argument that you engaged in with your supervisor during work hours in front of many other employees at the Sofa Source on Thursday May 23, 2019.[9]

Said letters contain no reference to any hostile text messages to Mr. Carter. (Riley Declaration ¶25; Zachary Declaration ¶16).

29.   During Plaintiffs' employment with Sofa Source, Sofa Source had in effect an Employee Handbook, which stated at page 7 in relevant part:

> If you feel that you have been subjected to conduct which violates this policy, you should immediately report the matter to your supervisor. If you are unable for any reason to contact this person, or if you have not received a

---

[9] True and correct copies of said termination notices are included within Plaintiffs' Appendix as Exhibit "6".

satisfactory response within five business days after reporting any incident of what you perceive to be harassment, please contact the HR manager. *If your supervisor or the HR manager is the person toward whom the complaint is directed, you should contact the president* (emphasis added). (Parker Depo. at 20-22).[10]

30.   During the relevant time period, Sofa Source did not have a Human Resources Department or a Human Resources Manager. (Parker Depo. at 17, 21).

31.   During the relevant time period, Amy Parker ("Ms. Parker") was the President of Sofa Source. Ms. Parker performed no management duties for Sofa Source and was always off-site. (Parker Depo. at 15). Riley was never informed that Ms. Parker was Sofa Source's President and did not know who was the President of Sofa Source. (Riley Declaration ¶26; Zachary Declaration ¶ 17).

32.   During the relevant time period, Mr. Parker was solely responsible for investigating complaints of sexual harassment at Sofa Source. (Parker Depo. at 17).

33.   Mr. Parker had received no training or instruction on the subject of sexual harassment. (Parker Depo. at 23).

34.   Sofa Source had provided no training or instruction to its employees on the subject of sexual harassment. (Parker Depo. at 22).

35.   Riley read Defendant's written sexual harassment policy once, briefly, at the time she was hired. She did not receive a copy of the policy, and she received no other training or instruction regarding sexual harassment from Defendant. (Riley Declaration ¶27).

---

[10] A true and correct copy of said Employee Handbook is included within Plaintiffs' Appendix as Exhibit "7"

36.   Riley only saw Mr. Parker in the workplace approximately three times during her employment with Sofa Source. (Riley Declaration ¶28).

37.   To Riley's knowledge, the only person above Mr. Carter at Sofa Source was Mr. Parker. Riley correctly believed that Mr. Parker deferred to Mr. Carter in regard to employee issues. (Riley Declaration ¶29; Parker Depo. at 38-40).

38.   Sofa Source made no record or note of the events that occurred on May 23, 2019. (Parker Depo., 30).

39.   In response to Plaintiffs' discovery requests, Defendant has produced no documents relating to any investigation of Riley's sexual harassment complaint. (Grimes Declaration[11], ¶3-6).

### B.   Facts Relating to Defendant's Affirmative Defenses.

40.   Defendant's Answer in this case asserts the following affirmative defenses:

THIRD AFFIRMATIVE DEFENSE Plaintiffs' claims are barred, in whole or in part, by the doctrines of unclean hands, laches, waiver, and/or estoppel.

FOURTH AFFIRMATIVE DEFENSE Plaintiffs' damages claims are barred to the extent they failed to mitigate damages.

FIFTH AFFIRMATIVE DEFENSE At all relevant times alleged herein, Sofa Source had in place the "Sofa Source Employee handbook (UT)", which included a "Sexual Harassment" provision, and which both Plaintiffs acknowledged having received and understood.

SIXTH AFFIRMATIVE DEFENSE At all relevant times, Sofa Source exercised reasonable care to prevent and promptly correct any sexual harassment or other inappropriate behavior.

---

[11] The Declaration of Kenneth B. Grimes is included within Plaintiffs' Appendix as Exhibit "8").

SEVENTH AFFIRMATIVE DEFENSE Plaintiffs' claims and damages are precluded based on the fact they failed to take advantage of any preventive or corrective opportunities provided by Sofa Source's policies or to otherwise avoid harm allegedly caused by Carter.

EIGHTH AFFIRMATIVE DEFENSE No act or omission on the part of Sofa Source constitutes a violation of Title VII of the Civil Rights Act of 1964.

NINTH AFFIRMATIVE DEFENSE No alleged act or omission of Carter constitutes an act within the course and scope of Carter's employment with Sofa Source.

TENTH AFFIRMATIVE DEFENSE Plaintiffs' claims are barred and recovery of damages is precluded because Sofa Source exercised reasonable care to prevent any alleged harassment and/or retaliation.

ELEVENTH AFFIRMATIVE DEFENSE To the extent that any of Carter's actions constitute a violation of any law, Sofa Source asserts that it did not direct, authorize, or ratify any such actions and that such actions were outside the course and scope of Carter's employment with Sofa Source.

TWELFTH AFFIRMATIVE DEFENSE Plaintiffs' claims and damages are subject to offset by interim earnings and benefits from alternative employment and payments from collateral sources, including without limitation, employment that Plaintiffs reasonably could have or should have obtained.

THIRTEENTH AFFIRMATIVE DEFENSE Sofa Source reserves the right to assert any additional defenses or affirmative defenses that apply pending further discovery, and nothing contained in this Answer should be construed as a waiver of any such additional defenses. [Doc. 11].

41.   Plaintiffs served their First Set of Interrogatories, Requests for

Production of Documents, and Requests for Admissions, upon Defendant on March

11, 2022. (Grimes Declaration, ¶2).

42.   On May 5, 2022, Defendant served its First Supplemental Responses to

Plaintiffs' First Set of Discovery Requests. Defendant's Response to Plaintiffs'

Interrogatory No. 3 states:

INTERROGATORY NO. 3: Please state the full, factual and legal basis for each affirmative defense that is alleged within Defendant's Answer, and identify all documents that relate thereto.

RESPONSE: Defendant objects to Interrogatory No. 3 on the grounds that it is overly burdensome, call for legal conclusions, and the affirmative defenses proffered by Defendant and speak for themselves.[12]

43.    The cut-off date for supplementation of discovery responses in this action was June 24, 2022. [Doc. 25].

ARGUMENT

I.    <u>Standard of Review</u>.

Summary judgment should be entered if the pleadings, discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier

---

[12] A true and correct copy of Defendant's First Supplemental Responses to Plaintiff's First Set of Discovery Requests is included within Plaintiffs' Appendix as Exhibit "9".

of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set out specific facts showing a genuine issue for trial." Fed. R.Civ.P. 56(e). If the nonmoving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

II.   <u>Riley is Entitled to Summary Judgment Against Defendant on Liability for Hostile Work Environment Gender Discrimination</u>.

In order to establish a claim for hostile work environment based upon gender discrimination, a plaintiff must establish that: (1) she was discriminated against because of her sex, and (2) that the discrimination was sufficiently severe or pervasive that it altered the terms or conditions of her employment. *Throupe v. University of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021).

Regarding the first of these elements, a plaintiff need only establish that her sex was a "motivating factor" in the unlawful employment practice. *Throupe,* 988 F.3d at 1251. To show the defendant was motivated by the plaintiff's sex, a plaintiff may point to acts of harassment that are "facially sex based." *Id.* Further, facially sex-neutral conduct can support a finding of gender animus when that conduct is viewed in the context of other, overtly gender-discriminatory conduct. *Id.* Whether the defendant's actions were based upon the plaintiff's sex is often a question of fact

for the jury, but it may be determined upon summary judgment in appropriate cases. *Id.*

Mr. Carter's conduct towards Riley clearly meets the first element. Actions such as touching, hugging, and rubbing, and comments about Riley's appearance and gender, were facially related to Riley's sex. *Throupe,* 988 F.3d at 1251. Within this context, other actions by Mr. Carter, such as staring, winking, and standing close to Riley, were also clearly motivated by Riley's gender. *Id.*

To meet the second element, a plaintiff must prove that the defendant's conduct was so severe or pervasive as to alter the terms or conditions of employment. *Throupe,* 988 F.3d at 1251. Proof of *either* severity *or* pervasiveness can serve as an independent ground to sustain a hostile work environment claim. *Id.* To make this determination, courts look at the "totality of the circumstances" and "consider such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance." *Throupe,* 988 F.3d at 1252. This element is assessed both objectively and subjectively. *Id.* Whether the defendant's conduct was sufficiently severe or pervasive is often a question of fact for the jury, but may be decided upon summary judgment in appropriate cases. *Id.*

The facts stated by Riley in this case are sufficient to meet both the "severe" and the "pervasive" elements. As to pervasiveness, Mr. Carter's harassment of Riley was a daily occurrence for her entire employment at Sofa Source, involving over three incidents per day. (*See* Statement of Facts, ¶8-13). Such harassment

14

included improper physical touching, such as hugging and rubbing of Riley's arms, neck and shoulders. As Riley's supervisor, Mr. Carter controlled her work environment, including scheduling and work assignments, and he had authority to terminate Riley's employment. As a result, Riley was highly intimidated by Mr. Carter, and was afraid that she would be terminated if she complained about his conduct. Such fear was increased by Mr. Carter's statements that he had authority to terminate employees. (Statement of Facts, ¶15-16).

These facts also meet the "severity" test. Mr. Carter improperly touched Riley on a daily basis, often in the form of hugging, or rubbing Riley's arms, neck or shoulders. On one occasion, Mr. Carter pinned Riley against a door while he hugged her. (Riley Declaration ¶12). On another occasion, Riley told Mr. Carter that she was in a lot of pain after having ear surgery, and would appreciate not being touched, rubbed or crowded. Less than an hour later Mr. Carter grabbed and rubbed Riley's arms. *Id.* These physical intrusions upon Riley's person constitute actionable assaults, and combined with their frequency, and Mr. Carter's other acts of harassment, easily meet the "severity" standard. Accordingly, Riley meets the "severe or pervasive" test under either alternative standard.

Riley recognizes that the elements of a hostile work environment claim often present issues of fact to be determined by the jury. However, this case is unusual in that Sofa Source has presented no admissible evidence contesting Riley's

claims.[13] Further, the harassment Riley describes is so pervasive and severe as to clearly meet the required elements as a matter of law. Therefore, the Court should grant partial summary judgment to Riley and against Sofa Source as to liability for hostile work environment gender discrimination.

III.   Riley is Entitled to Summary Judgment Against Defendant on any Potential Defense Under *Ellerth/Faragher*.

Under *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765(1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998), an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense, subject to proof by a preponderance of the evidence. Such defense includes two necessary elements: (a) that the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

Mr. Carter was Riley's direct supervisor and had hiring and firing authority over her. Therefore, Defendant is vicariously liable for any sexual harassment of Riley by Mr. Carter, unless it can establish the *Ellerth/Faragher* affirmative defense.

_____

[13] The uncontested facts show that Defendant conducted no investigation of Riley's sexual harassment complaint, and that Defendant has obtained no information from Mr. Carter. (Statement of Facts ¶23, 38-39).

However, the admitted facts of this case foreclose such a defense. Although Defendant had a written policy relating to sexual harassment, Defendant substantially failed to comply with that policy. The policy required aggrieved employees to report sexual harassment to the "HR Manager" (*See* Statement of Facts ¶29). However, Defendant did not have an HR Manager, or even an HR Department, at the time of Mr. Carter's harassment of Riley. (Statement of Facts ¶30). According to Defendant's policy, if the employee's supervisor was the person toward whom the complaint was directed, the employee was directed to contact the Company's President. However, Defendant's President, Amy Parker, performed no management duties for the Company, and was never at the workplace. Further, Riley was never informed that Ms. Parker was Defendant's President, and did not know who was Sofa Source's President. (Statement of Facts ¶31).

Riley only reviewed Defendant's sexual harassment policy once, briefly, on the day she was hired. She did not receive a copy of the policy, and she received no subsequent training or instruction on how to present a sexual harassment complaint. (Statement of Facts ¶35). Riley was reasonably fearful of retaliation by Mr. Carter, who had authority to terminate her employment, and occasionally reminded the employees of that fact. (Statement of Facts ¶15). The only person above Mr. Carter, to Riley's knowledge, was Mr. Parker. However, Riley rarely saw Mr. Parker in the workplace, and she correctly believed that he deferred to Mr. Carter on employee issues. (Statement of Facts ¶36-37). When Riley did complain to

17

Mr. Parker, she was fired the next day. Mr. Parker conducted no investigation of

Riley's sexual harassment complaint, and allowed the perpetrator, Mr. Carter, to

discharge Riley and Zachary the day after Riley complained to him about sexual

harassment. (Statement of Facts ¶38-39). Under these circumstances, Defendant

cannot meet its burden of proof on the *Ellerth/Faragher* affirmative defense, and

Riley should be granted summary judgment on that issue.

IV.   Riley is Entitled to Summary Judgment Against Defendant on Liability
for Unlawful Retaliation.

In order to establish a claim for unlawful retaliation under 42 USC §2000e-3,

a plaintiff must prove that: (1) she was engaged in protected opposition to

discrimination; (2) she was subject to an adverse employment action subsequent to

or contemporaneous with the protected activity; and (3) there is a causal connection

between the protected activity and the adverse employment action. *Argo v. Blue*

*Cross and Blue Shield of Kan., Inc.*, 452 F.3d 193, 1202 (l0th Cir. 2006).

In order to satisfy the first element, a plaintiff must show that she was

engaged in protected activity. A protected activity is one in which the individual

has complained about discrimination, filed a charge of discrimination, or opposed a

discriminatory practice. Although no magic words are required, to qualify as

protected opposition the employee must convey to the employer her concern that

the employer has engaged in a practice made unlawful by the anti-discrimination

statutes. *Hinds v. Spring/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).

Riley states that she expressly complained to Mr. Carter regarding the sexual

harassment she was experiencing during their confrontation on May 23, 2019.

(Statement of Facts ¶18-19). Riley's complaint included several specific incidents of sexual harassment. (*Id*.) Riley's account of this incident has not been contested through admissible evidence.[14] After her complaint to Mr. Carter, Riley complained about the sexual harassment to Mr. Parker, who was the highest-level manager of which she was aware. Mr. Parker admits that Riley complained to him about sexual harassment by Mr. Carter. (Parker Depo. at 33-34). Therefore, Riley clearly satisfies the first element of her retaliation claim.

Under the second element, Riley must establish she was subject to an adverse employment action. An adverse employment action includes "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F,3d. 1192, 1203 (10th Cir. 2007). Riley was terminated from her employment with Sofa Source on May 24, 2019, the day after she complained about sexual harassment to Mr. Carter and Mr. Parker. Said termination constitutes an adverse employment action. *Id.*

The third element requires that Riley show a causal connection between her protected activity and her termination. ``A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Constr.*

---

[14] As previously noted, no evidence from Mr. Carter has been produced in this case. Mr. Parker was not present during the confrontation between Riley and Mr. Carter. No other witnesses to the confrontation, except for Zachary, have provided evidence. Zachary confirms Riley's account of the confrontation. (Zachary Declaration ¶9).

*Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (*quoting Burrus v. United Tel. Com. of Kansas, Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)). "[A] one and one-half month period between protected activity and adverse action, may, by itself, establish causation. By contrast…a three-month period, standing alone, is insufficient to establish causation." *Id.* (*quoting Anderson v. Coors Brewing Co.*, 181 F,3d 1171, 1179 (10th Cir 1999).

In this case, Riley was terminated the day after she made her sexual harassment complaint to Mr. Carter and Mr. Parker. Further, the termination decision was made by the same person that Riley accused of sexual harassment – Mr. Carter. Mr. Parker deferred to Mr. Carter's decision to terminate Riley and Zachary, and conducted no review of Mr. Carter's decision. (Parker Depo. at 38-40). Finally, Riley was terminated for unspecified comments she allegedly made *during the same conversation* in which she complained to Mr. Carter about sexual harassment. These facts are sufficient to establish a causal connection between Riley's protected activity and her termination.

Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to rebut the inference that its motives were retaliatory, by producing evidence that the adverse action was taken for a legitimate, non-retaliatory reason." *Adair v. City of Muskogee*, 823 F.3d 1297, 1314 (10th Cir. 2016).

In this case, Defendant has alleged two conflicting non-discriminatory justifications, neither of which is supported by admissible evidence. First, Defendant has alleged that Plaintiffs were discharged due to unprofessional

conduct during their confrontation with Mr. Carter on May 23, 2019. Second, Defendant has alleged that Plaintiffs were discharged due to hostile text messages they sent to Mr. Carter.[15]

Regarding the first justification. Plaintiffs deny that they engaged in any unprofessional conduct during their confrontation with Mr. Carter on May 23, 2019. (Riley Declaration at ¶18-19; Zachary Declaration ¶9-10). Defendant has produced no admissible evidence to the contrary. Mr. Parker was not present during the confrontation and has no personal knowledge thereof. (Parker Depo., 23-27, 37-38). Sofa Source has not produced any admissible evidence from Mr. Carter, or any other source, as to what occurred during the confrontation. Further, Sofa Source conducted no investigation and has produced no documents relating to the confrontation. (Statement of Facts ¶38-39). Therefore, Defendant's first alleged non-discriminatory justification is not supported by admissible evidence.

Further, Mr. Parker testified that he told Riley and Zachary that they would *not* be fired *after* their confrontation with Mr. Carter. (Parker Depo. at 37; Riley Declaration ¶21). Mr. Parker further testified that the decision to fire Plaintiffs was made by Mr. Carter the day after the confrontation, in response to inappropriate text messages that Plaintiffs had sent to Mr. Carter. (Parker Depo. at 39-42). Therefore, Plaintiffs were clearly not fired because of their May 23, 2019 confrontation with Mr. Carter, according to Defendant's own evidence.

---

[15] Defendant has not indicated when the alleged hostile text messages were sent to Mr. Carter, the number of text messages, what they stated, or who, specifically, sent them.

Regarding the second alleged justification, Plaintiffs deny that they sent any inappropriate text messages to Mr. Carter. (Riley Declaration ¶24; Zachary Declaration ¶15). Mr. Parker has never seen the alleged text messages, and Sofa Source does not have them in its possession. (Statement of Facts ¶26-27). Sofa Source conducted no investigation of the text messages or the grounds for Plaintiffs' termination; Mr. Parker merely relied upon Mr. Carter's discretion. (Statement of Facts ¶23; 38-39).

Sofa Source has not produced any admissible evidence from Mr. Carter, or anyone else, as to the existence or content of the alleged text messages. Therefore, Plaintiffs' evidence that they did not send improper text messages to Mr. Carter is uncontested. Finally, the termination letters that were sent by Mr. Parker to Plaintiffs state that the reason for termination was the May 23, 2019 confrontation with Mr. Carter. They say nothing about any text messages. (*See* Exhibit "6" hereto). Therefore, Defendant's second alleged non-discriminatory justification is not supported or credible, and Defendant has failed to establish any non-discriminatory justification for terminating Plaintiffs.

V.   Zachary is Entitled to Summary Judgment Against Defendant on Liability for Unlawful Retaliation.

In *Thompson v. North American Stainless, LP*, 562 US 170 (2011), the plaintiff's fiancé filed a sex discrimination claim against their mutual employer. The employer then discharged the plaintiff, who filed a retaliation claim under 42 U.S.C. § 2000e-3(a), alleging that his discharge was in retaliation for his fiancé's filing of her discrimination claim. The Sixth Circuit Court of Appeals held that the plaintiff

lacked standing because he did not personally engage in any statutorily protected activity. 562 US at 174. The U.S. Supreme Court reversed, holding that the plaintiff fell within the class of persons "claiming to be aggrieved" within the meaning of 42 U.S.C. § 2000e-5(f)(1). *Thompson,* 562 US at 177.

Zachary's claim in the present case is similar to the plaintiff's claim in *Thompson*, except that the facts supporting Zachary's claim are substantially more compelling. Zachary was terminated at the same time, and even in the same text message, as Riley, the day after Riley complained to Mr. Carter and Mr. Parker about sexual harassment. Further, Zachary was present with Riley when she expressed her complaints, and supported Riley during those conversations. (Statement of Facts ¶18-19, 21-22). Moreover, Zachary directly engaged in protected activity when he told Mr. Carter to "stop bashing [Riley] for no reason" in response to Mr. Carter's discriminatory comments to Riley on May 22, 2019. (Statement of Facts ¶17).

The same authorities, facts and arguments that establish Defendant's retaliatory motive with respect to Riley's claim apply equally to Zachary's claim. Similarly, the deficiencies within Defendant's purported non-discriminatory justification apply equally to both Plaintiffs. (*See* Section IV hereof). Therefore, partial summary judgment should be entered for Zachary as to Defendant's liability on his retaliation claim.

VI.   <u>Plaintiffs Are Entitled to Summary Judgment Upon Defendant's</u>
      <u>Affirmative Defenses.</u>

Defendant's Answer in this case alleges eleven "Affirmative Defenses",

designated as Affirmative Defenses Three through Thirteen [Doc. 11]. (*See*

Statement of Facts ¶40).[16]

The party moving for summary judgment bears the initial burden of

identifying those portions of the pleadings, discovery, and affidavits that

demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317 at 323. Where the moving party will have the burden of proof

on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact

could find other than for the moving party. But on an issue for which the opposing

party will have the burden of proof at trial, the moving party need only point out

"that there is an absence of evidence to support the nonmoving party's case." *Id.*

A defendant bears the burden of proof with respect to the affirmative

defenses it has asserted. *Johnson v. Riddle*, 443 F.3d 723, 725 note 1 (10th Cir. 2006). A

plaintiff can meet its burden on summary judgment by pointing to the absence of

evidence supporting the defendant's affirmative defenses. *Wagner v. Feld*, Case No.

CV-12-817 (D. N.M. 2013). It is the defendant's obligation to produce evidence that

its affirmative defenses create a genuine factual issue for trial. *Id.*

In the present case, Plaintiffs' First Interrogatory No. 3 properly requested

that Sofa Source state the full factual and legal basis for each of its affirmative

---

[16] Defendant's First and Second "Affirmative Defenses" respond to the allegations
of Plaintiffs' Complaint and thus should not be considered as affirmative defenses.

defenses. (Statement of Facts ¶42).   Sofa Source refused to produce any information in response to said Interrogatory No. 3, instead asserting objections that Interrogatory No. 3 is "overly burdensome" and calls for "legal conclusions", and stating that the affirmative defenses "speak for themselves." *Id*.

Defendant's objections to Interrogatory No. 3 are clearly improper. It is not overly burdensome for Defendant to disclose the factual and legal basis for the affirmative defenses that it has asserted. Even if a viable objection based upon undue burden could be raised, Defendant failed to produce any evidence that such an undue burden exists. *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1196 note 11 (10th Cir. 2009). Similarly, Defendant's objection that Interrogatory No. 3 calls for "legal conclusions" does not state a valid objection. *YOMI v. Becerra*, Case No. 21-2224 (D. Kansas 2022). Even if that objection was valid, it would not excuse Defendant from meeting its obligation to disclose the factual basis of its affirmative defenses.

Whether or not Defendant's affirmative defenses "speak for themselves", they do not indicate the factual or legal basis upon which they are predicated. Defendant failed or refused to respond to Plaintiffs' reasonable discovery requests seeking that information. As a result, there is no evidence supporting Defendant's affirmative defenses, and no genuine issue of material fact precluding summary judgment in favor of Plaintiffs on said defenses as a matter of law.

CONCLUSION

Based upon the foregoing authorities and arguments, Plaintiffs request that summary judgment be entered in their favor and against the Defendant on the following issues: (1) upon liability for hostile work environment gender discrimination under 42 USC §2000e-2, in favor of Plaintiff Riley A. Cline; (2) upon any potential defense to Riley A. Cline's hostile work environment claim under *Ellerth/Faragher*; (3) upon liability for unlawful employment retaliation under 42 USC §2000e-3, in favor of both Plaintiffs; (4) upon Defendant's Affirmative Defenses. Plaintiffs request oral argument upon their Motion.

DATED this 8th day of August, 2022.

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiffs' Motion for Partial Summary Judgment Supporting Memorandum was served upon Defendant's legal counsel of record, Walter A. Romney, Jr., by email this 8th day of August, 2022.

/s/ Kenneth B. Grimes
Attorney for Plaintiffs